Proceed, counsel. If it pleases the Court, my name is Craig Martin from the Chamber of the Wilken Phoenix, Arizona. With me is Gregory Fisher, who is on the brief, and also in the courtroom is Johnny Guthrie and Susan. Could you stand up? Susan Guthrie, the appellants in this case. Thank you. Your Honor, Johnny Guthrie was fired and his life was destroyed for writing a letter to the editor expressing his own personal opinions. That letter expressed his own personal views, not a matter related to public policy. That letter was written on his own time, with his own resources. That letter did not reflect on his employment status with the city. That letter was not a letter criticizing official policy, and that letter had nothing to do with Johnny Guthrie's politics. Isn't the real question whether Guthrie was a policymaker himself? And how can you distinguish Guthrie's duties from those in the Biggs case? First, Your Honor, Judge Nelson, I want to answer that directly. But before you even get there, I do not agree that the big picture is whether he was a policymaker. I think the main question this Court has to answer is whether the speech Guthrie made is related to his role as a policymaker, if you found he was a policymaker. I don't think you have to reach the issue of whether he was a policymaker at all, because if a person – say you have a policymaker and the policymaker is making a statement that totally unrelated – is unrelated to his political affiliation. If, for example, Judge Nelson, somebody is talking about a policymaker is of one religion and somebody else is of a different religion and has nothing to do with job duties, responsibilities, to fire somebody for a view on abortion, which has nothing to do with city politics. This was not on abortion. It was about the very job he was doing and the audit that had been performed on the police agency he represented. So how could it be unrelated? It is unrelated to any city policy and it is unrelated to any city procedure and it's unrelated to politics. What happens is there was no city policy. It's unrelated to politics. Let me read you a little bit of what he wrote. Nowhere is that more evident than in the current antics of freshman councilman Wayne Ecton and councilman Bob Littlefield in their blatant attempt to besmirch the reputation of police chief Douglas Bartosz. This sounds like last November. You know, the First Amendment in the Supreme Court has repeatedly said you want to protect robust and uninhibited speech. Political speech. This is obviously political speech, isn't it, counsel? It is political speech about the views of two council members, not about the views of the city council. Not the views. The actions. The current antics. I've never been more outraged at the lack of professionalism displayed by these two obviously ill-informed councilmen. There is strong language about two people and if you continue reading, you will see that the views here are the personal views of the author, who, by the way, is not identified as being a deputy city attorney, and it also says that the views of the person he's responding to, the other councilman, are his personal views. Your Honor, if you look at the entire record, you will find that the majority of the city council actually were on the other side of this in favor of the then chief of police. So the fact that the conduct did not relate to a position taken, that the speech did not relate to a position taken by Johnny Guthrie or, I mean, by the city council. The city council had not said we endorse or don't endorse this Berkshire report. The city council had not said. Well, you made the statement that most of the council were on the other side, and I ask you, what difference does that make to our analysis? Because there had been no actual position taken by the city as a majority, and it just emphasizes and highlights that it is the personal views of two council members that Johnny Guthrie was disagreeing with. No, he also was disagreeing with the audit. He said, I've read that report. It reads like many others I've seen over the last 30 years. To describe it as self-serving would be kind. Okay. What is? That's not a position on a matter of governance of the police department taken by the legal advisor to the police department. Yes, he was supporting the chief of police and how the department was run, that department who, by the way, he thought was his client. And the Berkshire advisors were being somewhat critical of the police chief. Actually, it's one of those reports where you can take parts and say this part's critical. The majority of it was quite favorable. There are parts that you could pull out that one could say was critical. But, no, it would not be fair to characterize it as a highly critical or even a critical report of the police department, Your Honor. The answer now to the second part of your question, Judge Nelson, is that city attorneys are not always policymakers. Yes, you have the best case that says generally they are, but you have a line of Supreme Court cases and cases from this Court where city attorneys are not policymakers or at least that issue is not in front of the Court. We have Connick, the U.S. Supreme Court, dealing with a deputy county attorney. We have Finkelston, Rendish. And last week, Ceballos was argued in front of the United States Supreme Court. That case came out of the Ninth Circuit. Ceballos against Garcetti was a deputy county attorney. And the U.S. Supreme Court has heard arguments last week about whether the issue was a matter of public concern under the Pickering analysis. So how we have to do that. Are you suggesting we wait until that case is decided and whether the Pickering analysis is applied? Well, it's interesting, Your Honor, because the issue is whether the matter was a public concern from my reading of both this case and what the Supreme Court accepted review on, I would suggest that that case, one way, if it says it's not a matter of public concern, will have no effect on what this Court does. But if the Court says it is a matter of public concern, then the case that Ceballos' claim can continue, I would suggest that, yes, I think the Supreme Court's decision can impact directly what this Court does and how this Court rules. So you have a line of cases and a number of district court cases we cited as well where the courts have analyzed and found circumstances where a deputy county attorney or assistant city attorney is a public, is not a policymaker. What's your best case authority for your argument that deputy city attorneys are not policymakers in this circuit? What's your absolute best case, your strongest case? Well, I go to the U.S. Supreme Court. Connick. Connick? Connick. Yes, Your Honor. Connick is the U.S. Supreme Court specifically dealing with First Amendment rights of a deputy city or county attorney. And although it doesn't specifically in detail talk about the Elrod Bronte policymaker issue, it applies Pickering rather than Elrod and Bronte. That's the analysis you're urging us to make. Absolutely, Your Honor. And so you're asking us to disregard Biggs? No. I am suggesting that the way to harmonize Biggs and Bronte is to read it like the other circuits have read it, which is the speech has to relate to the official partisanship to the same party. But we cited Elrod in Biggs and didn't make that distinction you're urging upon us today. And, in fact, in Elrod it said that, well, because they didn't specifically talk in Biggs, I agree, Your Honor, one of the points made by the court there was that because the issue of policymaker wasn't specifically discussed, we should disregard it. I would suggest that you need to look at all the facts of this case, in this case, and you also need to read the line of cases that have found that district attorneys are not policymakers. We've cited them in our brief. But you said at the very beginning when I asked, isn't the issue whether or not he was a policymaker, you said, no, that was not the issue. The issue was whether or not the statement he made was in his capacity as a policymaker. I said you don't have to reach the issue because you need to look at whether his speech and we're dealing with speech here. We're not dealing with partisanship, which is what Elrod and Bronte dealt with and Biggs as well. We're dealing we're not dealing with a direct attack on the people you have to work with on a day-to-day basis. We're dealing with public speech that needs protection. This wasn't an attack on the two councilmen, calling them antics, what they were doing? And we want to know what the cause of their attack is.  The issue was the fact that Elrod was there. He was there since 1947, and he didn't work with the council. He had never met the council. And in three years of being there, Your Honor, he had been there once, never addressed them. He didn't have never met any of the council members, except, I think, he met the mayor of the social fund. He worked for the city attorney's office. Even though he was assigned to the police department, he worked for the city attorney's office. And I think now we're moving to the Walker factors. If you look at the ten factors that you apply, first, we disagree. He was hired as the police legal advisor. If you look at the job posting, it didn't say come and work for the city attorney's office. The job posting, which is exhibit one of the complaint and is throughout, said we need a police legal advisor who will work. So I had that exact same job in Clark County. I was the police legal advisor, worked for the DA's office, and I had no doubt about who my boss was. I don't know about the similarities. I know about your history, Judge Rawlinson, with the Clark County DA's office, but I don't know if there are similarities here or not. I don't know if, for example, your job was one where you were assigned to and lived at and worked out of the police department if your immediate supervisor was It doesn't make a difference where you're physically located. The point is who do you work for? Who do you report to? Who's your boss? Well, the city attorney himself said on a number of occasions that Johnny Guthrie's client was the police department. That's the city attorney in his evaluation of Johnny Guthrie in his annual performance, that he, both of them, saw his client as being the police department and the chief of police. Yes, but his client was the police department because the city attorney asked him to be that. She was. Is that correct? That is correct. Okay. Well, I mean, that's the job he was hired to do. It originated with the city attorney. He said, I want you to represent the police department, and so it went through the city attorney. It's a little different because when he was hired, the announcement was we need a police legal advisor. That's the position that was being filled. That position will work here and will Who made the announcement, though? Who did the recruiting? The city attorney did. The city attorney was involved in that? Of course. Absolutely, Your Honor. Not involved. Well, yes, the police chief testified, and the city attorney didn't disagree, that the police chief was directly involved and had yes or no say. When there's a job announcement, there is an agency at the top of it. What was the agency that was at the top of that job announcement? The job announcement is Exhibit A to the complaint, and what it says at the top, City of Scottsdale, below it, police legal advisor, and then it says City of Scottsdale is accepting applications for an attorney to be the legal advisor to the Scottsdale Police Department. That was the job announcement that he applied for. Now, it was through the city attorney's office, but that's not mentioned in this application. Johnny later learned that he would be assigned through the city attorney's office in the process, but he sat separately. And that's one of the reasons you have to look at this. You have to look at the facts and you have to apply the ten factors, five of which the district judge did not even consider or mention. You have to look at, did Johnny represent the city council specifically? Did he think he did? I understand. But if you take a job with the City of Scottsdale, who would you think you're working for? He worked for the City of Scottsdale, and in particular for, in the words of the city attorney, your primary client, your principal client, your client, those are words of the city attorney, the police department. That's who he advised. That's the only place he protected. When you get into these facts, Your Honor, I did want to mention about the role of disputed facts. One of my disappointments when we appeared in front of the district judge is that he seemed to think that this is a straight question of law. And this circuit, this, the Ninth Circuit has somewhat conflicting views about is this a mixed question of fact or law, or is it a question of fact for the jury? The Hobler case, 2003, says it's a mixed question of fact and law. The DeRouza case says it's a question of fact and even remanded because there were questions of fact on whether that person was a policyholder. So what you're faced with is what standard applies. But the point is, even if it were a mixed question of fact or law, when the district judge does not even cite or refer to five of what we consider to be strongly supported facts, but at most, at worst case, are disputed facts, it's disappointing. The point is, you should not label somebody just because they're an assistant city attorney as always being a policymaker. You need to analyze all the facts. And we contend that was not done here. Sotomayor, let me ask you this. What's your response to the letter found that excerpts of records 561 and 562 where the city attorney is stating that there had been problems in recent months with your client resisting taking direction from the city attorney's office and noting that the – that your client worked for the city attorney's office and not for the police department? My reaction is, first, that the city attorney testified that the only reason he fired Johnny Guthrie was for writing the letter. That's testimony in the record. So that he's – I'm just asking you your response to this letter, which is also in the record. So I'm – the first part is that the reason he was fired was writing the letter, and the city attorney said he would not have fired Johnny Guthrie, notwithstanding those issues, if there had been no letter to the editor. So the comment about prior issues was dealt with at the – we did have a hearing in front of the district judge on a preliminary injunction, and both the assistants – the city attorney said he never brought those matters to Johnny Guthrie's attention. I believe that's in the record in the testimony. I can't cite you to the page. Johnny had never been written up for what the city attorney then said were problems, Your Honor. So we suggest that that is at most – if the question is, was he fired for some reason other than writing his letter, at most that's a fact question, but I think the city attorney's own testimony nails that one. I would like to hear your response. How could the city attorney fire him if he wasn't working for the city attorney? Oh, he could be fired by the city attorney. He was in the city attorney's office. He understood that he was part of the city attorney's office. He was an assistant city attorney. But his job, his actual job functions, which is what this Court, the teachings of a number of cases this Court should consider, not the implied or inherent job functions, contrary to what counsel says. If you look at DeRouza, Hobler or Thomas, which are three cases this Court has said specifically, you look at the actual job, not the inherent job functions. So the fact that he worked in the city attorney's office does not change that his job was to work for the police department. I'd like to reserve the two and a half minutes I guess I have. All right. Thank you, counsel. May it please the Court. My name is David Schwartz. I'm here on behalf of the city of Scottsdale. This is not the first time this type of issue has appeared before this Court. This is another case wherein this Court will determine whether the First Amendment requires a government to continue to employ a high-level, confidential management employee, in this particular instance an assistant city attorney, who attacks, criticizes the elected officials, the city council and its members, about how to properly This is not a blank cloth that you're all riding upon. Fazio, Biggs, Walker, and the more recently, Hobler, as it relates to confidential employees, have all made very clear, in this circuit, we don't distinguish between so-called associational policymaker defense and speech policymaker defense. All First Amendment claims are treated the same. If you're a policymaker, you don't have First Amendment rights. This is, in fact, generally consistent with what other circuits do, but it's frankly irrelevant what the other circuits do. Well, let me ask how you would reconcile Fazio with Thomas v. Carpenter that apparently reads the policymaker exception as ethical only to partisan political patronage dismissals based upon party loyalty. How do you reconcile Fazio with Thomas? I don't see Thomas as actually deciding any issue. Thomas was a motion to dismiss in which one of the claims for the defendant was he's a policymaker. And what the Thomas v. Carpenter Ninth Circuit panel said was we can't decide that on a motion to dismiss. There may well be facts. Its ultimate conclusion is we'll deny the motion to dismiss. It was improbably granted. But raise the policymaker defense as a motion for summary judgment. It may very well be dispositive once you get to all the facts and can determine that based upon the facts. I don't see them in any way to be distinguishable. Fazio was they went that far. They went and said there are enough facts here to determine that an assistant county attorney, I think it was for the city and county of San Francisco, if I recall, Fazio, there were enough facts to demonstrate that this person had discretion. They advised regarding ordinances. They advised regarding contracts. They gave legal opinions. All the same kind of things that they found later in Biggs that would make attorneys, generally speaking, are going to be policymakers. Actually, Fazio was an assistant district attorney. Fazio was an assistant district attorney. He wasn't advertising. He wasn't advising too much on resolutions and statutes of the city. He was, but he was confidential as to prosecution decisions. Your Honor is correct. I was thinking, mixing up Biggs with, and I apologize for that. The real primary issue as decided in the lower court and up here is whether or not he's a policymaker. All of the cases on the Federal court level that address the issue in almost all of the lower courts have always found attorneys are those type of policymakers. They involve discretion, good judgment. They meet with, get confidential information. They often, as Mr. Guthrie did, drafted ordinances. Mr. Guthrie provided a contract for the city council. He advised policymakers. Mr. Bartosz, as even Mr. Guthrie himself admitted, as necessary, he could be called upon to go to the city council and, in fact, did on one occasion go to the city council meeting prepared to address them as their lawyer. They just chose not to hear from him on that particular occasion. And, counsel, what's your response to opposing counsel's position that the policymaking issue is never joined because this was a personal letter, had nothing to do with any of the politics of the city council? First of all, I think we ought to divorce ourselves from worrying about what the published article did, what we are talking about, because Mr. Guthrie didn't know it was going to be published side by side. The fact, the overall thing is there is a series of newspaper articles in which Councilman Acton, Councilman Littlefield are in a debate with the police chief and perhaps the mayor as well as to what is the proper way to administer the police department. Should they have change? Should it be quickly? We have this audit. How do we implement it? How fast should it be done? How should we best administer the police department? This Court in Biggs dealt with a similar issue. There was a recall involving the mayor, not the rest of the city council. It didn't matter that there is only one member or two members of a multi-member body that was being involved in the debate. Okay? More specifically, in Gentry v. Loudness County, which I cited to you from the Fifth Circuit, they made much more explicit than I ever could. That was in my supplemental citation. What they said is when you have, when you owe a duty to a multi-member body, you can't pick and choose, today I like this one, tomorrow I don't like this one, because today's coalition can be this person with that person. You have to stay as Mr. Goethe was required to have stayed and was told to stay neutral, stay out of these political debates. And that's really what's going on. What they'd like you to believe is politics is only happening during a campaign. You know, as if nothing involved in the proper administration of an agency can ever happen unless it's in November during an election. We all know that that's not true. We all can see that in the papers every day, who's up, who's down, because it affects everybody's, each council member's ability to get their agenda forward and moving and such. Further, this was not just about two councilmen. As Judge Bea quoted from the article, this was an attack on against as well the city council, that they've deviated from their own standards and that the antics of Littleton and Acton were merely an example on which the city council was distrained. This was not just an attack on one or two persons. This was an attack on the entire city council. And even if it was one or two, it's our position, that still makes it a political issue. And more particularly, what we were talking about, these are attacks not just about general politics. They're about policy views. And every the majority of other circuits, the Rose v. Stevens case from the Sixth Circuit, the Bonds case from the Seventh Circuit, the Flynn case from the First Circuit, all say the same thing. A subordinate high-level policymaking-type employee cannot be involved in a debate about what is the best way to administer a particular agency that he works in, his employer, because those are policy views. I also want to address a little bit about the whole question of do you look at inherent duties, do you look at actual facts. And we think they've taken out of context the DeRouza opinion, because what DeRouza talked about was the defendant, the governmental entity tried to say, well, he's a deputy county sheriff. That means automatically he's a he must be a policymaker because there are other cases that say that. Well, that actual analysis of the particular facts, that's not the situation. Biggs made quite clear that you look at the inherent duties. And I might also say to you. Kennedy is that a mixed question of fact and law, or is it a question of law? I think it is a mixed question of fact and law, and I think that's what Walker said. I don't honestly remember whether that was mentioned at Hobler, but I think Walker established that. And we reviewed DeNovo as to whether any reasonable trier of fact could find from the facts that he was not a policymaker. No, that's not, in fact, the correct test. What Walker said is it's a mixed question of law and fact. The mixed the factual issue, the only thing that determines is, is there a factual dispute about what the duties are? The conclusion to be derived from the duties is a question of law for this Court. There is no dispute about the duties. We have on the excerpt of record page 520 the actual job announcement. We all know exactly what it says. It lists the duties here. This is not a case in which there are disputes about what the duties are. They may try and tell you today they dispute as to whether those inherent duties matter, but I'll tell you this. In the lower court, they didn't make that argument. I will read to you from their response in motion for summary judgment, court's record docket number 54, page 4, line 22, after listing the ten Walker factors. This is what they wrote. Additionally, all parties appear to agree that in evaluating the above factors, courts do not focus on the work actually performed by the particular employee, but on the inherent duties of the position. And what do they cite? They cite Biggs. They're trying to make an N-1. They told the lower court, look only at the inherent duties, and they're trying to get this court now to rewrite, because they didn't. Apparently weren't very successful in doing that. They were right in the lower court. They're wrong up here. The proper focus, as every other circuit court has also held, is on the inherent duties, because the rationale for this is simple. Today, if we accept what they say, if Mr. Guthrie is continued in his job, but he only because he could be doing inherent things that would make him a policymaker, and we don't say he has to, you have a third of an assistant attorney now. Kennedy. I understand you correctly. Based on what you've read, your position is that the appellant has waived the point that you have to look at mutual rather than inherent. That is my position. I think they're also wrong on the merits as well. I didn't understand your answer to Judge Beyer's question about our standard of review. What is our standard of review in this case? It's a de novo review from the summary judgment as well as the de novo review of the mixed question of law and facts. Exactly. I thought you responded that's not exactly correct when he said de novo. But you agree it's de novo. It is. All right. Thank you. Now, with regard to the particular factors, I only want to hit a couple of them. First, are the job duties that are listed. Oh, and I do want to address Judge Rawlinson's question about who did the job announcement actually say he worked for. What they were reading to you from was a newspaper advertisement, which I'm not certain was even cited to the lower court below. The job announcement, this page 520 of the excerpt of record, first sentence, the police legal advisor is a member of the city attorney's office. There can be no legitimate and genuine dispute that Johnny Guthrie worked for the city. He was employed by the city attorney's office. He got his paycheck from the city. He appeared in two lawsuits in Maricopa County Superior Court, said, I'm filing this on behalf of the city. You know, yes, he primarily worked for the police department. But he was the city's lawyer. The city council, as its elected representatives, had the right to look to him to be their lawyer as well. He was called at least one time and prepared to talk to them. The duties that are listed in job announcements, it's for your characterization. I suggest to you that those duties are basically pretty much word for word the kind of things that this Court in Biggs said made that associate attorney in a private law firm a policymaker, met with elected officials as necessary, drafted ordinances, drafted contracts, rendered legal opinions. All of those things Mr. Guthrie did both as inherent duties and, frankly, he did them factually. They didn't dispute down below. He did those things factually as well. The most important thing is Mr. Guthrie in the court below, the testimony himself said, I have a fair amount of influence. That to me seems to be the most important factor. He had influence over policies implemented by the police department. That is a classic test for someone who is a policymaker. I might point out one other thing out. In addition to the inherent duties also being involving him serving as counsel to the city council, the record also reflects that Mr. Guthrie was, in fact, commended for his responding to inquiries by the mayor's office, which is not necessarily mentioned in the briefs, but you'll find that at the excerpts of record 436 and 437, specifically page 216, line 16 to 217, line 2, and then also at exhibit 10, which is at the excerpts of record of 551. They say there's this whole host of cases which say attorneys aren't policymakers. They cited five that they say address the issue. Three of them have been expressly overruled by the Second Circuit in Gordon v. County of Rockland. The fourth one never even talked about it. I suggest the fifth one, which also came from a district court in the Second Circuit, has been implicitly overruled. Well, I'm sure that there may well be, for example, Finkelstein probably wouldn't be a policymaker. He was civil service protected. And the nature of civil service protection, which is true both in the city of Scottsdale and other places, is you're not supposed to have politics involved for people who are civil service protected. It's why this case has a very narrow focus. It's not the big bad wolf that the amicus and Mr. Guthrie tried to pretend, well, this is so important for everybody else because all of the employees will be chilled. This is a very narrow, scripted application. I don't think you need to get to the Pickering balance test, but I want to just spend a minute or two on it. We think that if somehow you get to the Pickering balance test, you still end up affirming this judgment. There's no doubt if you don't find policymaker status dispositive, it's at least given great weight by those people who don't find it dispositive. In Rose v. Stevens, they said, yes, you apply Pickering, but you know what, they apply it in a dispositive fashion. Bonds, again, also applies in a dispositive fashion as to political views and policy views, but even those people who might not at least give it great weight. And that's in line with the Cona case where they talk about close working relationships. You have to give deference to the government with that. We have disruption, both actual and reasonable apprehension in this particular case, from two different aspects. We're not talking, as all of their evidence deals with, disruption within the police department. We're talking about disruption between the city council and its lawyers, the city attorney's office. How do we know that? Not just Mr. Pinard said it in his letter, not did Mr. Pinard just testify to it. We have an actual e-mail from one of the council members saying, hey, I think what you did was terrible, this is a conflict of interest. How can my own lawyer, Mr. Guthrie, who clearly must have been doing it with your approval, Mr. Pinard's, be out there criticizing me? There is the evidence, frankly it was undisputed, that there was in fact disruption of that level of trust between the city council and its lawyer. And we can understand that. Ethical rules tell us lawyers don't criticize, particularly in public, their own clients. Secondarily, there was also the disruption between Mr. Pinard's as a city attorney and his trust for Mr. Guthrie. As Mr. Pinard put in his letter and he testified to, one of the things that the letter made clear is Mr. Guthrie didn't understand that the city was his attorney. And in fact, that view has now been crystallized because Mr. Guthrie testified in the lower court he never thought the city was, in fact, his client. So in fact, the level of disruption of trust by the city attorney who, on behalf of Mr. Guthrie, was advising the police department was destroyed. And every case has said that that disruption of trust, particularly in someone who is at a different office, who is out there acting on his own on behalf of the city attorney, is sufficient justification in a Pickering balance. Because remember, Pickering also, Pickering is, again, a pure issue of law as to which balance who wins government interest versus the First Amendment interest. We think there was sufficient evidence to also affirm the judgment based upon that. And unless Your Honors have any further questions, I'll leave it at that. Thank you. Thank you, counsel. Rebuttal. Counsel stood in front of you and said if you're a policymaker, you have no First Amendment rights. This circuit said in Finkelstein, quote, we reject the proposition that prosecutors have unfettered discretion to discipline assistant prosecutors for exercising their First Amendment rights. It has long been jurisprudence that policymakers have First Amendment rights, and that does not end the inquiry. Judge Rawlinson, you asked for cases. I think Finkelstein would be a case to read. But I also would hope that this Court avoid what it can to create an intercircuit split. We have cited cases from every other circuit, or from most every other circuit, and I want to give you two, that say that the speech must relate to partisan politics or to official policies of the city, and this was neither. Two cases to read would be Barker and Bonds. That's the Tenth Circuit and the Seventh Circuit. And if you read those cases, you'll see a way to harmonize Fazio and Biggs from this circuit with what every other circuit has said who has considered the issue, which is speech must relate to partisan politics or official policies. And Johnny Guthrie was not talking about any official policy. Judge Bee, you asked about whether this was a mixed question of factor law and counsel finally, after some prodding, admitted that it is and that this is de novo review. But I want to remind this Court that as you go about that de novo review that you must apply, you should also remember the teachings of the Supreme – Alina Supreme Court cases that when you're dealing with matters which have a chilling effect on First Amendment, when you're dealing with protected rights like the First Amendment and in particular, where you're dealing with conversations about important policies, including police departments, that there is a particularly strict scrutiny in looking at government actions. But do you disagree with Counselor Mr. Schwartz when he said that as to the mixed question of facts and law, the only factual component of that is what the duties were, and as to those, there are no different facts, are there? No, Your Honor, there are all kinds of factual disputes here. Did Johnny Guthrie have control over anyone? He did not, we say, and that was his testimony. Did he – was there any public perception of him? There's no dispute about that. Did anyone say otherwise? They claimed that he gave advice and had significant influence. That's different than having control over someone. That's very fair. There's no material question of fact on that. Okay. Thank you, Your Honor. Did he have any obligation in his job to be responsive to partisan politics? What was the core purpose of his job? That's one that we've had substantial discussion, and that is a disputed fact. But aren't his job duties listed in the job announcement? Sure. So why is there a dispute of fact? I guess I don't have a dispute over what the job duties say, and if you read those job duties, they all apply to his doing the job in the city. Did he draft – they talked about him drafting things as opposed to reviewing things. He didn't make policy. There was a policy committee. He wasn't even on the policy committee in the police department. So to say that he made policy when there was a committee that made policy of the senior management, he didn't – wasn't on it. What was he referring to when he said, I have influence, I have a great deal of influence? I'm sorry, Your Honor. What was he referring to when Mr. Schwartz related that he had testified, I have a fair amount of influence? Oh, if you read the specific words of Johnny Guthrie, his words were, I have a specific amount of influence on certain police matters. In other words, a policy would be presented to Johnny Guthrie and he'd say, wait, I think that's illegal, that violates the Fourth Amendment, and they would go back and create another policy that was consistent. That is what in context Johnny talked about. He did not make policy. Instead, acted as a lawyer, did and gave advice. Your Honor, to – to – Counsel, you've exceeded your time. If you would sum up in the next 30 seconds. Yes, Your Honor. I'm reminded of the words of Ceballos, which says, emphasis from this Court, which emphasizes the importance of government officials to be able to speak out. I'm reminded of the amicus that was filed from the newspaper that published this, which tell us that you have to look at the consequences of if you can fire somebody, no matter what they say on the matter, a person who is particularly in a position to know that that is a very bad precedent, it's a very bad place to be, and I would hope that this Court looks at policies and the implications of what it's doing beyond this specific case, because this is a significant issue that needs to be looked at. And the best way to reconcile the Ninth Circuit cases with all the other circuits is to say there has to be a nexus, a relationship between the speech and official politics or official, between either official politics or official policy, and here there was no official policy. Thank you, Counselor. We understand your argument. Thank you to both Counselors. The case just argued is submitted, and we will be in recess for 15 minutes.
judges: D.W. Nelson, Rawlinson, Bea